

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99555 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| ROBERT BAKER, | ) | Honorable Mark H. Neill |
| | ) | |
| Defendant/Appellant. | ) | Filed: February 11, 2014 |

### Introduction

Robert Baker (Appellant) appeals from the trial court's judgment convicting him of two counts of first-degree statutory sodomy and six counts of first-degree child molestation. We affirm.

### Factual and Procedural Background

The State charged Appellant with three counts of first-degree statutory sodomy, one count of first-degree statutory rape, and six counts of first-degree child molestation, as a prior and persistent offender and a prior sex offender. The evidence adduced at trial, in the light most favorable to the verdict, is as follows.

Appellant lived in the basement of a home occupied by several other family members, including Mother and her five daughters, T.C., A.C., C.C., K.C. and A.B (collectively the victims). The girls ranged in age from 10 to 15 at the time of Appellant's trial in 2012.

T.C. testified Appellant squeezed her chest and touched her "private part" underneath her clothing with his hand. T.C. testified the touching occurred in the basement. T.C. stated she was 13 when the touching first occurred and that it happened more than once.

A.C. testified Appellant touched her more than once when she was about 11 years old. Appellant squeezed A.C.'s breast underneath her bra and squeezed her "privacy" or "middle part" outside of her clothing.

C.C. testified Appellant touched her "middle part" with his hand over her clothing on five separate occasions.

K.C. testified she woke up once in the basement alone with Appellant and he would not let her leave. K.C. stated Appellant touched her chest and her "middle part" over her clothing before she was able to run past him and up the stairs. On another occasion, Appellant touched K.C.'s "middle" underneath her clothing.

A.B. testified she was eight years old when Appellant put his finger inside of her "middle part" and touched her breast with his mouth.

The victims eventually disclosed the abuse to family members. In June 2010, they were taken to the hospital where they were briefly interviewed by a social worker, Karen Gudic (Gudic), and were examined by a physician. T.C. told Gudic Appellant touched her private parts and chest and had put his finger in her private part. A.C. told Gudic Appellant touched her private parts and her chest. C.C. told Gudic that Appellant touched her private parts. K.C. told Gudic Appellant touched her private parts and her "boobs." A.B. did not answer Gudic's questions.

The victims were also interviewed at the Children's Advocacy Center (CAC). T.C. said in her CAC interview that Appellant touched her middle part over her clothing and put his hand under her shirt and bra to touch her chest. A.C. told the interviewer that Appellant squeezed her middle and her breast over her clothing on one occasion. C.C. said in her interview that Appellant touched her middle part over her clothes once. K.C. told the interviewer that Appellant would squeeze her breasts, would touch her and her sisters in the middle of the night while they were sleeping and that he had attempted to squeeze her middle. A.B. told the interviewer that Appellant had touched her "middle part" with his finger and "boobs" with his mouth.

Megan Marietta (Marietta), a forensic interviewer with CAC, testified at the trial. Marietta stated CAC's mission is to reduce the trauma that children and families experience when there are allegations of physical or sexual abuse or when children are witnesses to violent crimes. Marietta has a bachelor's degree and a master's degree in social work, is a licensed clinical social worker, completed the Kids First Finding Words training program and has participated in numerous conferences on the topic of interviewing children. During her time at CAC, Marietta had conducted nearly 700 interviews.

During direct examination, the following exchange occurred:

> Q. [By the Prosecutor] And Ms. Marietta, can you tell us about the process of disclosure of a child for some sort of abuse?
> A. Yes.
> [Defense Counsel]: I'm going -- to I'm going to object again as far as relevance and bolstering. General disclosure of -- unless she's going to testify as to specific disclosures with these kids. General disclosures I think is not relevant.
> THE COURT: Come on over here, please.
> (Counsel approached the bench, and the following proceedings were had:)
> THE COURT: The relevance at this time?

[Prosecutor]: In order to explain the -- there have been some inconsistencies with the girls that is explained through the process of disclosure, why they would say one thing one time, another thing at a different time. She's an expert that can testify to that. That's not something in a jury's regular course of learning in their lifetime.

…

THE COURT: Why don't you just ask about that specifically if you wish to, and then I'll see what -- if she's asked that, are you going to object to it? I'm going to allow that. You go ahead, make your objection. I think she can talk about inconsistency in a general frame work and then you can cross-examine her…

…

(The proceedings returned to open court.)

THE COURT: Go ahead.

Q (By the Prosecutor) Ms. Marietta, I need to be very specific here.

A. Okay.

Q. Can you name, without further describing, the different steps in disclosure process?

A. Yes, I can.

Q. Okay. Could you do that now?

A. Sure.

[Defense Counsel]: I'm still going to object, Your Honor, as far as relevance.

THE COURT: At this point it's overruled.

THE WITNESS: The first phase of the disclosure process is denial. The second phase is a tentative disclosure. The third phase is an active disclosure. The fourth stage is recantation, and the fifth stage is reaffirmation.

Q (By the Prosecutor) Does that -- do those different stages of disclosure often result in some inconsistent statements during -- if you take a statement from one stage and compare it to a statement of another stage?

A. Yes, it could.

[Defense Counsel]: I'm going to still object, Your Honor, commenting on credibility of a witness.

THE COURT: I'm going to allow it at this point, and I'm going to assume that counsel is going to tie this into the case here at point.

[Prosecutor]: Yes.

Q (By the Prosecutor) And during your interviews, do children often go through multiple disclosure stages, or is it just one stage at the point you were interviewing them?

A. In the course of a forensic interview, you can see a child go through all of the phases, let alone throughout the entire systemic response. So from the time the original allegation is seen up until whatever

4

end point you want to use, you can see the child go to and from the stages based upon any varying consequence that may happen.

The State later raised Marietta's testimony regarding the stages of disclosure during closing argument, stating:

> The first stage is denial, and so if you ask a child that's been abused right [away] what's happening, they might not tell you because that first stage of disclosure is the denial. The second one is tentative where they're tentatively – they're kind of going to tell a little bit that happens because they're not quite sure what the reaction's going to be. They're not sure how -- who they're going to tell, what's going to happen, or if anything's going to change in their life. The third step is active disclosure where they're able to actually tell what happened to them fully. Fourth step sometimes recanting. The children will recant often because of the reaction that happens after they've told, all right. If they're not in a comfortable environment, if they get a negative reaction, they might recant. And then the last step is to affirm. They affirm what had happened to them, and they go back to their active disclosure and, again, tell what had happened to them, that they had been molested.
> She described that, and she said that can lead to sometimes inconsistencies in a child's version of events because they might be willing to tell a little bit here and then more and more as the process goes. She says sometimes in that hour, hour and a half conversation she'll have with them, they'll go through some of the steps. Sometimes it will take years for the child to get through all of the steps of the process of disclosure.

During the defense's closing argument, counsel emphasized the inconsistencies in the victims' accounts in arguing for acquittal.

Prior to submission of the cause to the jury, the court granted Appellant's motion for judgment of acquittal at the close of all the evidence as to one of the first-degree statutory sodomy charges. The jury found Appellant guilty on the two remaining charges of first-degree statutory sodomy and the six counts of first-degree child molestation and not guilty on the charge of first-degree statutory rape. On January 26, 2013, the court sentenced Appellant to eight concurrent sentences of life in prison. This appeal follows.

5

Appellant raises two points on appeal, each alleging the trial court erred in allowing Marietta to testify as to the five stages of disclosure and her opinion that the stages could explain discrepancies in the victims' accounts over time because this testimony violated his rights to due process and a fair trial.

The trial court has broad discretion to admit or exclude evidence at trial. State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006). On appeal, this Court will reverse the trial court's ruling on the admission of evidence only when the court has clearly abused its discretion. Id. The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. Furthermore, we review the trial court's ruling for "prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." Id. at 223-24. An error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. Id. at 224.

"'[E]xpert testimony is admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence.'" State v. Ray, 407 S.W.3d 162, 170 (Mo. App. E.D. 2013), quoting State v. Haslett, 283 S.W.3d 769, 779 (Mo. App. S.D. 2009). An expert witness should not be permitted to comment on the veracity of another witness because such testimony invades the province of the jury. State v. Churchill, 98 S.W.3d 536, 538-39 (Mo. banc 2003). However, an expert may

testify as to his opinion on an ultimate issue in the case as long as the opinion does not state that the defendant is guilty of the crime.  Ray, 407 S.W.3d at 170-71.

> In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized.  General testimony describes a "generalization" of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse.  Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused.  The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible.

Churchill, 98 S.W.3d at 539 (internal citation omitted).

In his first point on appeal, Appellant contends Marietta's testimony on the stages of disclosure invaded the province of the jury as particularized testimony because it usurped the decision-making function of the jury.  In his second point, Appellant argues in the alternative that if the testimony can be characterized as general testimony it did not aid the jurors in determining whether the victims in this case were telling the truth and was more prejudicial than probative because it gave the jurors the mistaken belief they could determine the accusers' credibility based on Marietta's theory.  For the purposes of clarity, we will address Appellant's second point on appeal first.

Marietta's testimony cannot be described as particularized testimony because it did not speak to the victims' credibility as to whether they had been abused.  Marietta's testimony regarding the stages or phases of victim disclosure and the possibility that these stages could result in inconsistent statements was general testimony describing behaviors and characteristics commonly found in those who have been the victims of sexual abuse.

7

Appellant acknowledges on appeal that the substance of Marietta's testimony, by itself, is general testimony. When characterized as generalized testimony, Appellant argues Marietta's testimony was not logically relevant and inadmissible.

To be admissible, evidence must be logically and legally relevant. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Id.

Appellant contends that if Marietta's general testimony about how abused children behave cannot be particularized to the accusers in this case, the evidence is not logically relevant because it does not tend to make it more or less likely that the accusers are telling the truth or that they were actually abused. We disagree.

Marietta's expert testimony describing generalized behaviors commonly found in child victims of sexual abuse was logically relevant and admissible. It is generally accepted that such testimony is admissible because it "'assists the jury in understanding the behavior of sexually abused children, a subject beyond the range of knowledge of the ordinary juror.'" State v. Thomas, 290 S.W.3d 129, 135 (Mo. App. S.D. 2009), quoting State v. Bowler, 892 S.W.2d 717, 720 (Mo. App. E.D 1994). Here, both the State and the defense argued vigorously as to the veracity and credibility of the victims and the meaning and consequence of the inconsistencies in their statements. Marietta's general testimony was admissible to assist the jury in understanding the behavior of victims of sexual abuse, a topic relevant to the jurors' duties of assessing the witnesses' credibility

8

and rendering a verdict. See State v. Williams, 858 S.W.2d 796, 800 (Mo. App. E.D. 1993) (expert testimony in child abuse cases may disabuse the jury of widely held misconceptions about rape and rape victims and can explain behavior that might appear unusual to a lay juror, aiding in the jury's evaluation of the evidence free from the constraints of popular myths).

Alternatively, Appellant argues the State's use of Marietta's general testimony to explain discrepancies in the victims' accounts and statements essentially transformed the testimony into improper particularized testimony that invaded the province of the jury. Appellant contends the record indicates that in presenting the evidence the State intended to use Marietta's evidence as particularized evidence and did, in fact, do so by arguing during closing that discrepancies in the victims' stories were due to the stages of disclosure and were not indicative of fabrication. We disagree.

"Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused." Churchill, 98 S.W.3d at 539 (internal citation omitted). In Williams, 858 S.W.2d at 798-801, this Court discussed the distinctions between generalized and particularized testimony. With regard to particularized testimony on the credibility of a witness, this Court noted that such "[e]xpert testimony presents the danger that jurors may be over-awed by the evidence, or may defer too quickly to the expert's opinion." Id. at 800. The Court further found that:

> Expert testimony that comments directly on a particular witness' credibility, as well as expert testimony that expresses an opinion with respect to the credibility or truthfulness of witnesses of the same type under consideration invests "scientific cachet" on the central issue of credibility and should not be admitted. However, it may be appropriate for an expert to testify that a child demonstrates age-inappropriate sexual knowledge or awareness, and that a child's behaviors are consistent with a stressful sexual experience.

9

Id. at 800.

Marietta never directly expressed an opinion on any specific victim's credibility and, thus, never lent a "scientific cachet" on the central issue of credibility. Marietta's expert testimony about the stages of disclosure and the *possibility* they could lead to inconsistent victim statements was information beyond the range of knowledge of the ordinary juror and was offered only to assist the jury in understanding the behavior of sexually abused children and assessing the evidence before them.

Appellant, in essence, is not disputing the substance of Marietta's testimony but instead the prosecutor's use of Marietta's testimony to argue that the victims were credible. The State, however, has the right to argue evidence and reasonable inferences from the evidence. Clemmons v. State, 785 S.W.2d 524, 530 (Mo. banc 1990). The State may also state conclusions fairly drawn from the evidence and has the right to provide its view on the credibility of witnesses. Id. By doing so, the State did not alter the nature of the expert testimony given, transforming the evidence from generalized to particularized.

Based on the foregoing, Appellant's points on appeal are denied.

### Conclusion

The judgment and sentence of the trial court are affirmed.

_____
Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

10