Lisa White Hardwick, Judge
Russell Walker appeals his convictions for two counts of statutory rape. He contends the circuit court erred in instructing the jury because the verdict directors violated his right to a unanimous verdict. He also argues the court erred in admitting expert testimony about characteristics of sexual abuse victims. For reasons explained herein, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Walker's daughter, B.W., was born in August 2000. B.W. did not start living with Walker until 2009, when she and her *9 brother moved into his apartment in Maryville. In 2011, B.W. and her brother moved with Walker to his residence in Burlington Junction. Walker was physically abusive to both B.W. and her brother. When B.W. was 10 years old, Walker began having sexual intercourse with her. Walker continued to sexually abuse B.W. up until just before she turned 14 years old in August 2014. In May, June, and July 2014, Walker had sex with B.W. every other day. Every time, Walker would tell her brother to go to his room and close the door. Then, Walker would grab B.W. by the wrist, tell her to "come on," take her into either his bedroom or the bathroom, remove their clothes, get on top of her, and stick his penis in her vagina. B.W. said that she knew what was going to happen when he grabbed her wrist because he had done it "a hundred times before."
B.W.'s best friend and her best friend's mother witnessed Walker behaving inappropriately with B.W. On one occasion, when Walker was dropping B.W. and her brother off at a school dance, B.W.'s friend and her mother saw Walker put his hands on B.W.'s waist and give her a prolonged kiss on the lips. B.W.'s friend's mother said that the kiss was "way too long for a parent to be kissing their child," and B.W.'s friend said that the "prolonged kiss" was uncomfortable to watch and was not the way parents usually kiss their kids. B.W.'s friend also said that, when she spent the night with B.W., she heard Walker call B.W. to come "cuddle," and she saw Walker and B.W. "spooning."
Eventually, B.W. and her brother ran away from Walker's residence and were placed in foster care. B.W. did not tell anyone about the sexual abuse until five months after they left Walker's residence. B.W. initially told her best friend, who, in turn, told her mother. B.W. then texted her own mother and disclosed that Walker had raped her. B.W. said that she waited to tell anyone about the sexual abuse because she was ashamed, embarrassed, afraid that people would judge her and make fun of her, and concerned that she and her brother would be split up if they were removed from Walker's residence.
B.W. disclosed to a Children's Advocacy Center forensic interviewer that Walker had put his penis in her vagina. B.W. had suicidal thoughts and was depressed over what happened to her and her brother. She was diagnosed with PTSD, anxiety, and depression.
The second victim in this case is N.G., who was born in November 2001. N.G. and her mother, who was dating Walker, moved in with him in 2010 when N.G. was nine years old and moved out in 2012 when N.G. was 11 years old. For the entire time N.G. lived with Walker, Walker had sexual intercourse with her in his bedroom every time her mother went to Walmart. Walker would drag N.G. into his bedroom, close the door, pull off her pants and his pants, and then put his penis in her vagina. N.G. did not tell her mother or anyone else about the sexual abuse because she was scared that she would get into trouble for it and be suspended from school. N.G. did not know how many times Walker had sexual intercourse with her, but she said that it had gone on for three years.
A medical exam revealed that N.G. had a complete transection of her hymen, which indicated a prior penetrative injury caused by something inserted into her vagina. During a forensic interview, N.G. initially denied any sexual contact with Walker. Later in the interview, however, she disclosed that Walker had sexual intercourse with her every other night when her mother went to Walmart.
According to N.G.'s mother, while she and N.G. lived with Walker in Burlington Junction, he would encourage her to leave *10 the house and go to Walmart, which was 20 miles away. Sometimes, she went to Walmart two or three times a week and would be gone for an hour. The children would be at home in bed when she left. Whenever she was out in the evening on those occasions, Walker, who never volunteered to run these errands, would frequently call her near the time she would be returning to find out if she was on her way home and where she was. B.W.'s brother said that, every time B.W. or N.G. were in Walker's bedroom with Walker, he could hear groaning noises and the bed squeaking.
The State charged Walker with one count of first-degree statutory rape involving B.W., one count of first-degree statutory rape involving N.G., and one count of attempted first-degree statutory sodomy involving B.W. A jury trial was held. Walker testified at trial that he never sexually abused either B.W. or N.G. The jury found Walker guilty of both counts of first-degree statutory rape and not guilty of attempted first-degree statutory sodomy. The court later imposed the jury-recommended sentences of 25 years in prison on each of the statutory rape counts, to be served consecutively. Walker appeals.
ANALYSIS
In Points I and II, Walker contends the circuit court erred in submitting the verdict directors for the first-degree statutory rape counts because they failed to specify a particular incident or to instruct the jury that it must unanimously agree on the same incident.
Whether a jury has been properly instructed is a question of law, which we review de novo. State v. Richards , 300 S.W.3d 279, 281 (Mo. App. 2009). Article I, section 22(a) of the Missouri Constitution protects the right to a unanimous jury verdict. State v. Celis-Garcia , 344 S.W.3d 150, 155 (Mo. banc 2011). "For a jury verdict to be unanimous, 'the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.' " Id. (citations omitted).
The verdict director for the first-degree statutory rape count involving B.W. was Instruction No. 7, and it read:
As to Count 1(a), if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about May 2014, in the County of Nodaway, State of Missouri, the defendant knowingly had sexual intercourse with B.W. in defendant's bedroom in Burlington Junction, and
Second, that at that time B.W. was a child less than fourteen years old, then you will find the defendant guilty under Count 1 of statutory rape in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
The verdict director for the first-degree statutory rape count involving N.G. was Instruction No. 9, and it read:
As to Count 2, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about January 2011, in the County of Nodaway, State of Missouri, the defendant knowingly had sexual intercourse with N.G. in defendant's bedroom in Burlington Junction every time her Mom went to Wal-Mart, and
Second, that at that time N.G. was a child less than twelve years old, then you will find the defendant guilty under Count 2 of statutory rape in the first degree.
However, unless you find and believe from the evidence beyond a reasonable *11 doubt each and all of these propositions, you must find the defendant not guilty of that offense.
The issue of jury unanimity may be implicated in cases such as this, which are commonly referred to as "multiple acts" cases. Id. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56. The evidence in this case was that Walker had sexual intercourse with B.W. and N.G. in the same manner and same location approximately every other day over a period of time, yet he was charged with only one count of statutory rape for each victim. The count for each victim specified the month in which the act of statutory rape occurred but did not specify a particular act of statutory rape on a particular date. Walker argues that, by not specifying a particular act of statutory rape in each count, the verdict directors ran afoul of the Supreme Court's opinion in Celis-Garcia , 344 S.W.3d 150.
In Celis-Garcia , the Court held that a defendant's right to a unanimous jury verdict was violated when the verdict directors failed to separately identify specific instances of sodomy, as the evidence showed that multiple, separate acts of hand-to-genital contact with each victim had occurred in various rooms in the house. Id. at 159. In so holding, the Court noted that the defendant's right to a unanimous verdict in multiple acts cases could be protected by having either: (1) the State "elect[ ] the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describ[e] the separate criminal acts presented to the jury and the jury ... instructed that it must agree unanimously that at least one of those acts occurred." Id. at 157 (footnote omitted).
The victims in Celis-Garcia identified "at least seven separate acts of statutory sodomy that occurred at different times (some more than three days apart) and in different locations" within the house in which they lived with their mother, who was the defendant, and her boyfriend. Id. at 156. The Court found that, "[d]espite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts." Id. The verdict directors (one for each victim) allowed the jury to find the defendant guilty of first degree statutory sodomy if the jurors believed " 'that between [specified dates] ... the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals....' " Id. The Court explained that the verdict directors were erroneous because they allowed a finding of guilt when jurors may not have unanimously agreed on the same specific act of sodomy:
This broad language allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy. Under the instructions, the jurors could convict [the defendant] if they found that she engaged or assisted in hand-to-genital contact with the children during an incident in her bedroom, or on the enclosed porch, or in the shed, or in the bathroom.
Id.
While the evidence for each victim in Celis-Garcia showed that multiple acts of sodomy occurred at different, specified locations over an extended time period, the evidence for each victim in this case showed that multiple acts of statutory rape occurred in an identical manner in the *12 same location approximately every other day over a period of time. The Court in Celis-Garcia recognized that a case in which the victim reported repeated, identical acts of sexual abuse occurring in the same location might prompt a different result:
The state argues that requiring the state to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts. The case hypothesized by the state was not the one presented here because both [victims] provided details of multiple sexual acts that were committed at different times and in different locations.
Id. at 157 n.8 (emphasis added).
Like the victim in the hypothetical referenced in the Celis-Garcia footnote, B.W. and N.G. testified to repeated, identical sexual acts committed at the same location during a particular time span, and they were unable to testify to specific acts on specific dates. Consequently, the verdict directors for B.W. and for N.G. focused on a single month, and any evidentiary fact that could possibly distinguish one incident of rape from another for each victim was included in the verdict directors. The factual findings required by each verdict director rendered it impossible for the jurors to differentiate between the repeated, identical acts of statutory rape that fell within each of the verdict directors. For example, the verdict director for the statutory rape count involving B.W. required the jury to find that Walker had sexual intercourse with B.W. in "May 2014" in "defendant's bedroom in Burlington Junction."[1] With the factual restrictions contained in this verdict director, there was no further basis upon which the jurors could possibly distinguish one act of statutory rape from another. Because the jurors had no evidentiary basis upon which to differentiate between these repeated acts, Walker's right to a unanimous verdict was not at risk of being violated. Cf. State v. Carlton , 527 S.W.3d 865 (Mo. App. 2017) (holding that the defendant's right to a unanimous verdict was violated when the court submitted identical verdict directors on two counts of statutory sodomy, because the record contained evidence that would have allowed the jury to differentiate between the multiple, repeated acts of sodomy allegedly committed during the charged time period).
Walker argues that he was exposed to the possibility of a non-unanimous verdict for the statutory rape count involving B.W. because "some of the jurors could have believed that an incident occurred in May but not in June, whereas others could have reached the opposite conclusion." As noted, however, the verdict director for B.W. specifically required the jury to find that the sexual intercourse occurred in "May 2014." Moreover, the fact that acts on different dates within the month of May 2014 could theoretically have been relied on by the jurors in finding Walker guilty cannot demonstrate a violation of the right to a unanimous verdict when the record contains no evidentiary basis for the jurors to distinguish between those acts.
We agree with the State that Walker's right to a unanimous verdict was even more protected by the verdict director for the statutory rape count involving N.G.
*13 The State assumed a heightened burden in the count involving N.G. because the verdict director required the jurors to find that, in January 2011, Walker had sexual intercourse with N.G. in his bedroom in Burlington Junction "every time her Mom went to Wal-Mart." (Emphasis added.) This verdict director provided no basis for the jurors to rely on different acts in reaching their verdict because they had to unanimously find that Walker had sexual intercourse with N.G. every time her mother went to Walmart in January 2011. In other words, the jurors had to unanimously agree on the existence of every act of statutory rape Walker committed in January 2011 that was encompassed within the factual limitations outlined in the verdict director. The risk that Walker's right to a unanimous jury verdict was violated was non-existent, as the verdict director required the jury to find that he committed every act that occurred during the specified time period.
Neither verdict director for first-degree statutory rape violated Walker's right to a unanimous jury verdict.[2] Therefore, the circuit court did not err in submitting them. Points I and II are denied.
In Point III, Walker contends the circuit court erred in allowing expert testimony about characteristics of victims of sexual abuse. He claims the expert's testimony was improperly used to bolster the victims' credibility and was more prejudicial than probative.
The circuit court has broad discretion to admit or exclude evidence at trial. State v. Forrest , 183 S.W.3d 218, 223 (Mo. banc 2006). We will not disturb the court's ruling unless when find that the court abused that discretion. Id. An abuse of discretion occurs when the "ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." State v. Baker , 422 S.W.3d 508, 513 (Mo. App. 2014).
"[E]xpert testimony is admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence." Id. (citations omitted).[3] "In child sex abuse cases, there are typically two types of expert testimony that are challenged: generalized and particularized." Celis-Garcia , 344 S.W.3d at 159. Generalized testimony is testimony that "describes the general behaviors and characteristics commonly *14 found in children who have been sexually abused." Id. at 159-60. Particularized testimony is testimony "regarding the specific victim's credibility as to whether the victim actually was abused." Id. at 160. Particularized testimony is inadmissible because it "usurps the jury's province to determine a witness's credibility." Id.
The challenged testimony in this case was from Joyce Estes, the executive director of the Northwest Missouri Children's Advocacy Center. Estes had been a counselor for 30 years and had taken over 400 hours of specialized training in child abuse, 80 hours of training in forensic interviewing, and over 100 hours of training in trauma and therapy. Her specific field of expertise was child abuse, particularly child sexual abuse. Estes testified that, based upon her research and training, it is generally accepted in her field that most children do not disclose sexual abuse right away and that disclosure is a process. She also testified that less than a third of child victims disclose right away. Walker asserts that these two statements by Estes were inadmissible because they implicitly bolstered B.W.'s and N.G.'s credibility by "introducing the misleading aura of certainty that surrounds scientific evidence." We disagree.
Estes's testimony about the behaviors that sexually abused children commonly exhibit was clearly generalized testimony. In neither of the two statements about which Walker complains did Estes explicitly or implicitly comment on B.W.'s or N.G.'s credibility or on the veracity of their reports that Walker had sexually abused them. Because Estes did not offer her opinion as to the victims' credibility, she never "lent a 'scientific cachet' on the central issue of credibility." Baker , 422 S.W.3d at 514-15 (citation omitted). Moreover, Walker's counsel relied heavily on the victims' delay in disclosing the sexual abuse to assert Walker's innocence. Estes's testimony, based on her extensive experience and studies performed in her field of expertise, was logically relevant to " 'assist[ ] the jury in understanding the behavior of sexually abused children, a subject beyond the range of knowledge of the ordinary juror.' " Id. at 514 (citations omitted). Her testimony was more probative than prejudicial and, therefore, was also legally relevant. See id. The court did not abuse its discretion in admitting Estes's testimony. Point III is denied.
CONCLUSION
The judgment is affirmed.
All Concur.

Although B.W. testified that some acts of rape might have occurred in the bathroom, the verdict director specifically required the jury to find that the charged act occurred "in defendant's bedroom."

Walker also contends the verdict directors violated his right to be free from double jeopardy because "there is no way of knowing exactly what act of statutory rape the jury used for its verdict of guilt" and, therefore, the State could later charge him with another act of statutory rape during the charged time period. Walker did not object to the verdict directors on this basis at trial and did not include this argument in his motion for new trial. Therefore, review, if any, is for plain error. Plain error will be found only where the alleged error "demonstrates on its face substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." State v. Biggs , 170 S.W.3d 498, 503 (Mo. App. 2005). Walker's allegation of error does not meet this standard. Because it was impossible to distinguish between each act of statutory rape during the charged time period, the verdict director for B.W. encompassed every act of statutory rape that Walker committed against her in his bedroom in May 2014, while the verdict director for N.G. encompassed every act of statutory rape that Walker committed against her every time her mother went to Walmart in January 2011. Walker cannot be successively prosecuted or punished for the acts of statutory rape encompassed by the verdict directors.

Section 490.065, RSMo, the statute that governs the admission of expert testimony, was amended on August 28, 2017. The amended version does not apply to this case.