

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD84655 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | October 25, 2022 |
| RODGER L. GANNAN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Sullivan County, Missouri**
The Honorable Terry Alan Tschannen, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge,
Anthony Rex Gabbert, Judge

Rodger L. Gannan ("Gannan") appeals from a judgment convicting him of one count of statutory rape in the first degree and one count of patronizing prostitution as a prior offender. Gannan argues on appeal that the trial court plainly erred in submitting verdict directors that failed to sufficiently specify a particular incident of statutory rape in the first degree and a particular incident of patronizing prostitution, depriving him of his constitutional right to a unanimous verdict. Finding no error, we affirm.

## Factual and Procedural Background

The State charged Gannan as a prior offender with first-degree statutory rape in violation of section 566.032 and patronizing prostitution in violation of section 567.030.[1] Viewed in the light most favorable to the jury's verdicts,[2] the evidence at trial established the following:

E.H. ("Victim"), a female, was born in 2005, to S.B. ("Mother") and J.H. ("Father"). Mother and Father separated in 2006 and divorced in 2012. Mother and Father shared custody of Victim and her older sister ("Sister").

In 2010 or 2011, Mother began dating Gannan. Mother married Gannan in 2012. During their relationship, Mother and Gannan lived in three houses located in Brookfield, Missouri. The first house was on Smith Street ("Smith Street house"); the second house was on Sanford Street ("Sanford Street house"); and the third house was on Courtland Street ("Courtland Street house").

In September 2018, Mother and Gannan were in the process of moving from the Sanford Street house to the Courtland Street house. The Courtland Street house was close to the house where T.B. ("Aunt") lived. Aunt is Gannan's niece but Victim referred to her as "aunt."

On September 15, 2018, Victim spent the night at Aunt's house. Early on September 16, Victim confided in Aunt that Gannan had been touching Victim inappropriately since

---

[1]All statutory references are to RSMo 2016 as supplemented through August 28, 2018, unless otherwise indicated.

[2]We view the evidence in the light most favorable to the jury's verdicts, disregarding all contrary evidence and inferences. *State v. Jackson*, 636 S.W.3d 908, 913 n.1 (Mo. App. W.D. 2021).

they lived in the Smith Street house. Victim told Aunt that Gannan "makes me touch his" while motioning to the genital area, and made references to performing oral sex on Gannan. Aunt told Victim that they needed to tell Mother or Father. Victim decided to tell Father.

Aunt called Father during the morning of September 16, 2018, and asked him to come to her house. Victim, with the help of Aunt, told Father what she had relayed to Aunt. Aunt then asked Mother to come to her house without Gannan. Victim told Mother that Gannan "had been touching her[,] making her do stuff with him[,] had been hurting her, and having sex with her." Victim described sex as "putting his thingy in me, and . . . [he] tried to in my butt."

Mother and Father took Victim to the Brookfield Police Department. Victim spoke to Officer Zachary Bunton ("Officer Bunton"). Victim told Officer Bunton that Gannan had been molesting her since 2012, and that he had done so in each of the houses she and Mother had lived in with Gannan. Victim told Officer Bunton that Gannan "inappropriately touch[ed] her" and showed her pornographic videos when she was eight or nine years old. Victim reported that the most recent time that Gannan inappropriately touched her was on September 14, 2018. Victim described that instance as one in which Gannan placed his hand on her inner thigh near her vagina while the two were in a vehicle together. Victim told Officer Bunton that the last time she had "sex" with Gannan was approximately three weeks ago, and that Gannan would wear a condom when they had sex.

Victim also gave a written statement at the police statement. In her written statement, Victim said that Gannan began touching her in the vagina and in the "but[t] area" when she was eight years old. According to Victim's written statement, Gannan would

3

"stick his dick inside of [her] when [Mother] was asleep or when she had to go somewhere." Victim's statement generally indicated that Gannan bribed her with money, cigarettes, and time with her friends, and that Gannan threatened that she would "never see anyone ever again" if she told anyone about the sexual abuse.

On September 21, 2018, Victim participated in an interview with Tammy Nickell ("Nickell"), a forensic interviewer employed by the Children's Advocacy Center ("CAC") in Trenton, Missouri. Victim told Nickell that Gannan had touched her more than one time in places that should not be touched, particularly her breasts, genitals, and buttocks.[3] During the course of the CAC interview, Victim said that Gannan had forced her to suck his penis more than once, including one time three weeks prior in the Courtland Street house, and that Gannan had put his penis in her vagina "a lot of times."[4] Victim told Nickell that Gannan offered her money, cigarettes, and time with her friends in order to get her to perform oral sex on him or to have sex with him. Victim also revealed that there was an instance when she was in the sixth or seventh grade during which Gannan sucked her genitals.

Victim said that, the first time Gannan touched her inappropriately, she was in the purple bedroom that she shared with her sister at their old house in Brookfield. Gannan came into their bedroom, lied on Victim's bed, and touched her genitals, buttocks, and

---

[3]Nickell instructed Victim to label which places should never be touched on a drawing of a nude female. Victim labeled the breasts as "private area 1," the female genitalia as "private area 2," and the buttocks as "private area 3." For clarity, we refer to body parts by their names rather than by the labels used by Victim during the CAC interview.

[4]Nickell instructed Victim to label the genitals of a drawing of a nude male. Victim labeled the penis as "thing." As mentioned *supra* note 3, we refer to body parts by their names rather than by the labels used by Victim during the CAC interview.

chest. Victim said that Gannan touched her under her clothes and inside her body. Victim told Gannan to stop, but he did not and instead told Victim that, if she told anyone what happened, she would never be able to see anyone ever again.

In response to Nickell's question about the last time something happened, Victim said that "last Friday" while they were in the car together, Gannan put his hand on her leg close to her genitals. Gannan drove to Aunt's house. When they arrived, Gannan took his hand off Victim's leg and began yelling at Sister, who was walking to Aunt's house, and drove off toward the Courtland Street house so that Victim could gather clothes in order to spend the night at Aunt's house. Victim explained that there was not yet a bed set up in her room at the Courtland Street house. Victim said that Gannan came into her bedroom and pulled his penis out of his pants. Victim said that Gannan would not let her leave the room until she either performed oral sex on him or allowed him to put his penis in her vagina. Victim did not want to perform oral sex on Gannan, so they had vaginal intercourse while Gannan put his hand over her mouth. Victim said that, when Gannan pulled his penis out of her vagina, "stuff" came out of his penis, falling onto the bedroom's wood floor. Gannan cleaned up the mess with a red towel that he put in the laundry. Gannan then took Victim to Aunt's house.

During a two-day jury trial in March 2021, Victim, among others, testified, and a video of Victim's CAC interview with Nickell was admitted into evidence and viewed by the jury. During her trial testimony, Victim summarized the years of sexual contact Gannan had subjected her to. Victim told the jury that, when they lived in the Smith Street

5

house, Gannan had touched her breasts and her genitals under her clothes, asked her to touch his penis, and told her not to talk about how he touched her.

Victim further testified that the sexual contact with Gannan continued when they moved to the Sanford Street house. Victim generally testified about performing oral sex on Gannan, about Gannan showing her pornography, and about Gannan placing his penis in her vagina. Victim specifically testified about an incident in the hallway outside her bedroom where Gannan placed his penis in her anus.

Victim testified that she was thirteen years old and in seventh grade when they moved to the Courtland Street house. Victim testified about the specific incident where she had sexual intercourse with Gannan in the Courtland Street house, and how, for the first time, sex with Gannan did not hurt and instead "felt good." Victim described how Gannan then took Victim to an appointment and to Aunt's house, where Victim later confided in Aunt about the sexual abuse.

Victim generally testified that Gannan would periodically give her cigarettes or money after their sexual encounters. In a sworn statement, Victim said that Gannan gave her ten dollars after having sexual intercourse with her at the Courtland Street house, though at trial, Victim did not recall if Gannan gave her money on that occasion.

Gannan testified in his own defense during trial. He denied ever touching Victim inappropriately, denied having sexual relations with her, and denied paying her with money or cigarettes for sexual activity.

During the jury instruction conference, Gannan's counsel affirmatively indicated that he agreed to the verdict directing instructions the court intended to submit. Instruction

6

No. 5 submitted the statutory rape in the first-degree charge, and directed the jury as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between August 28, 2018 and September 16, 2018, in the State of Missouri, the defendant knowingly had sexual intercourse with [Victim], and

Second, that at that time [Victim] was a child less than fourteen years old,

then you will find the defendant guilty under Count I of statutory rape in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. 6 submitted the patronizing prostitution charge, and directed the jury as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between August 28, 2018 and September 16, 2018, in the State of Missouri, the defendant pursuant to a prior understanding gave money and cigarettes to [Victim], and

Second, that defendant did so with the understanding that [Victim] would engage in sexual conduct with defendant, and

Third, that defendant did engage in sexual conduct with [Victim], and

Fourth, that [Victim] was less than fourteen years old,

then you will find the defendant guilty under Count II of patronizing prostitution.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense under this instruction.

7

As used in this instruction, "sexual conduct" means sexual intercourse, deviate sexual intercourse or sexual contact.

As used in this instruction, "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person.

As used in this instruction, "sexual contact" means any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

During its closing argument, the State summarized the sexual abuse that Victim endured in each of the three houses she lived in with Mother and Gannan. The State's closing argument reminded the jury that Victim described Gannan touching her genitals and her touching his genitals when they lived in the Smith Street house; described Gannan placing his penis in her vagina and anus at various times when they lived in the Sandford Street house; and described the specific incident of vaginal intercourse with Gannan in the Courtland Street house while the family was in the process of moving into the house.

Gannan's closing argument sought to cast doubt on the veracity of Victim's testimony by focusing on the discrepancies in Victim's written statement given to Officer Bunton, the CAC interview, and her trial testimony; by emphasizing the lack of corroborating evidence; and by highlighting Gannan's testimony that denied ever engaging in sexual activity with Victim or paying her with cigarettes and money for the same.

The jury found Gannan guilty as charged. The trial court entered a judgment in accordance with the jury's guilty verdicts and found Gannan to be a prior offender in

8

accordance with section 558.016 ("Judgment"). The Judgment sentenced Gannan to life imprisonment for statutory rape in the first degree and to five years imprisonment for patronizing prostitution, with the sentences to run consecutively.

Gannan filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial ("motion for new trial"). The motion for new trial did not challenge either Instruction No. 5 or Instruction No. 6 on any basis.

Gannan appeals.

## Standard of Review

Gannan challenges the verdict directors, Instructions No. 5 and No. 6, on appeal. He acknowledges that he has not preserved his appellate challenges to the verdict directors, as he did not object to the verdict directors during the jury instruction conference or raise a challenge to the verdict directors in his motion for new trial. *See* Rule 28.03[5] ("Counsel shall make specific objections to instructions or verdict forms considered erroneous. . . . The objections must also be raised in the motion for new trial in accordance with Rule 29.11."). Gannan nonetheless asks us to exercise our discretion to review the verdict directing instructions for plain error pursuant to Rule 30.20.

The State urges us to decline Gannan's invitation to conduct plain error review, and argues that defense counsel affirmatively expressed that he had no objection to either Instruction No. 5 or Instruction No. 6 under circumstances from which it can be inferred that he did so based on a reasonable trial strategy. To support its position, the State relies

---

[5]All rule references are to Missouri Supreme Court Rules (2021), unless otherwise indicated.

on two decisions from our Southern District: *State v. Beerbower*, 619 S.W.3d 117 (Mo. App. S.D. 2020), and *State v. Davidson*, 599 S.W.3d 257 (Mo. App. S.D. 2020).

In *Beerbower*, the defendant was convicted of three counts of child molestation. 619 S.W.3d at 123. The defendant's counsel indicated during the instruction conference that the defendant had "no objection" to the verdict director concerning the first count of child molestation. *Id.* at 125. On appeal, the defendant argued that the trial court committed plain error in submitting this jury instruction because there were at least two distinct acts of sexual contact from which the jury could have found the defendant guilty. *Id.* at 124. The Southern District noted that "a trial court does not commit plain error for failing to take action *when the record clearly indicates* that the defendant's counsel strategically allowed that action." *Id.* at 126 (quoting *State v. Snyder*, 592 S.W.3d 375, 381 (Mo. App. S.D. 2019)) (emphasis in original).

In *Davidson*, the defendant was convicted of one count of child molestation in the first degree. 599 S.W.3d at 260. The defendant's counsel advised the trial court during the instruction conference that he had "[n]o objections, no corrections from defense," to the tendered jury instructions, which included the verdict-directing instruction. *Id.* On appeal, the defendant argued that the trial court plainly erred in submitting this verdict-directing instruction because the instruction failed to specify which of the "several acts" of sexual contact in evidence served as the basis for a conviction. *Id.* at 262, 263. The Southern District rejected the defendant's request for plain error review, concluding that the record clearly indicated that defense counsel's strategy was to allow the verdict-directing instruction to be given to the jury. *Id.* at 263.

10

Both *Beerbower* and *Davidson* refused to afford plain error review in reliance on *State v. Ess*, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part and dissenting in part), where Judge Wilson noted that "[c]laims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state's instructions may have been motivated by reasonable trial strategy." *Beerbowe*r, 619 S.W.3d at 125; *Davidson*, 599 S.W.3d at 262. Judge Wilson's concurrence reasoned:

> If an appellate court . . . denies plain error review of such a claim, the defendant may still raise the issue in a post-conviction claim of ineffectiveness of counsel and a record can be made as to whether the decision not to object was a reasonable trial strategy.

*Ess*, 453 S.W.3d at 214 n.6. Judge Wilson's concurrence thus promoted an approach that would authorize denying plain error review on direct appeal in ***any*** case where instructional error is claimed, so long as the appellate court can conclude that the failure to object to an instruction "***may*** have been motivated by reasonable trial strategy," leaving the development of a record on that subject of trial strategy to a subsequent post-conviction proceeding.

Judge Wilson's suggested approach has not been adopted by a majority of the Missouri Supreme Court, rendering suspect the Southern District's reliance on the concurring opinion in *Ess* to refuse to afford plain error review in *Beerbower* and *Davidson*. Binding authority instead directs that a defendant "does not waive plain error review by failing to object to a faulty jury instruction or by failing to submit a correct instruction." *State v. Clay*, 533 S.W.3d 710, 715 (Mo. banc 2017) (quoting *State v. Celis-Garcia*, 344 S.W.3d 150, 154 n.3 (Mo. banc 2011)). In *State v. Wurtzberger*, 40 S.W.3d 893, 897-98

(Mo. banc 2001), the Supreme Court held that a defendant's failure to object to an instruction extends to include affirmatively or expressly telling the trial court that the defendant has no objection to the instruction. *See State v. Myles*, 479 S.W.3d 649, 656-57 (Mo. App. E.D. 2015) (citing *Wurtzberger* to conclude that plain error review was not waived although defendant affirmatively expressed he had no objection to jury instruction challenged on appeal). Although the Supreme Court in *Clay* has recognized a narrow exception to affording plain error review of instructional error where the record establishes that a defendant "invited the instructional error by proffering jointly with the state" a later challenged instruction, there is nothing in the record in this case to permit the conclusion that the challenged verdict directors were jointly proffered by Gannon.[6] *Clay*, 533 S.W.3d at 715 (noting the record showed that defendant substantially participated in drafting and submitting a self-defense instruction). Even accepting the existence of a narrow exception for plain error review in the case of a jointly proffered instruction, it is plain that a majority of the Supreme Court has not yet recognized an exception for plain error review on direct appeal in a criminal case where unpreserved instructional error could be ascribed to a reasonable trial strategy.

---

[6]The parameters of the "jointly proffered instruction" exception to affording plain error review of instructional error appears to be extremely limited, extending only to situations where the defendant "jointly proffers" the actual instruction challenged on appeal, consistent with settled precedent that "a defendant cannot complain about an instruction given at his request." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012). The parameters of the "jointly proffered instruction" exception do not appear to extend, however, to the defendant's tender of *other* proposed instructions that are not being challenged by the defendant on appeal, even where the unchallenged instructions suffer the same defect as the instruction that is being challenged on appeal. "In *Celis-Garcia*, the Court rejected the State's waiver argument, and reviewed for plain error an unpreserved claim that verdict directors violated the defendant's constitutional right to a unanimous jury verdict, even though the defendant failed to object to the State's verdict directors *and* submitted her own verdict directors that suffered from the same defect challenged on appeal." *State v. Adams*, 571 S.W.3d 140, 144 (Mo. App. W.D. 2018) (citing *Celis-Garcia*, 344 S.W.3d at 154 n.3) (refusing to find that defendant waived plain error review by submitting converse instructions which mirrored verdict directors challenged on appeal).

We therefore reject the State's contention that *Beerbower* and *Davidson* require us to conclude that Gannan waived plain error review of his claims of instructional error by affirmatively stating that he had no objection to Instructions No. 5 and No. 6 under circumstances that could be explained by trial strategy.[7] Accordingly, we will review Gannan's unpreserved claims of instructional error for plain error.

Review for plain error is a two-step process. *State v. Reese*, 632 S.W.3d 365, 370 (Mo. App. W.D. 2021). "[F]irst, we must determine whether the trial court committed evident, obvious, and clear error affecting the defendant's substantial rights; second, if plain error is found, we then consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *State v. Hendricks*, 619 S.W.3d 171, 179 (Mo. App. W.D. 2021). "'[T]the defendant bears the burden of establishing manifest injustice' [or a miscarriage of justice]' amounting to plain error." *State v. Yount*, 642 S.W.3d 298, 300 (Mo. banc 2022) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

Instructional error rarely constitutes plain error. *State v. Alvarez*, 628 S.W.3d 400, 406 (Mo. App. W.D. 2021). "For [an appellant] to establish plain error from an instructional error, he 'must show more than mere prejudice and must show that the [trial] court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and caused manifest injustice or miscarriage of justice." *Id.* (quoting *State v. Scott*, 278 S.W.3d 208, 212 (Mo. App. W.D. 2009)).

---

[7]Pursuant to Supreme Court Operating Rule 22.01, and Missouri Court of Appeals Western District Special Rule 31, this opinion has been reviewed and approved by order of the court en banc, as this opinion chooses not to follow *Beerbower* and *Davidson*.

## Analysis

In two points on appeal, Gannan alleges that his verdict directors, like those at issue in *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), were not sufficiently specific to protect Gannan's right to a unanimous jury verdict. Gannan's first point on appeal challenges Instruction No. 5, which submitted the charge of statutory rape in the first degree by engaging in "sexual intercourse" with Victim on or between August 28, 2018, and September 16, 2018.[8] Gannan's second point on appeal challenges Instruction No. 6, which submitted the charge of patronizing prostitution by giving Victim money and cigarettes on or between August 28, 2018, and September 16, 2018, with the understanding that Victim would engage in sexual conduct.[9] With respect to both points on appeal, Gannan argues that the evidence at trial established multiple specific acts in both the Sanford Street house and the Courtland Street house,[10] any one of which could fall within the scope of the verdict directors, rendering the verdict directors not sufficiently specific to ensure that the jury's verdicts were unanimous.

Article I, section 22(a) of the Missouri Constitution provides, in relevant part, that "the right of trial by jury as heretofore enjoyed shall remain inviolate." Our Supreme Court has interpreted that phrase as guaranteeing "all the substantial incidents and consequences

---

[8]Section 566.032.1 provides that "[a] person commits the offense of statutory rape in the first degree if he or she has sexual intercourse with another person who is less than fourteen years of age." Sexual intercourse is statutorily defined as "any penetration, however slight, of the female genitalia by the penis." Section 566.010(7).

[9]Sexual conduct is statutorily defined in section 566.010(5) to include the touching of genitals in addition to vaginal intercourse, anal intercourse, and oral intercourse.

[10]Gannan's brief relies only on evidence about acts that purportedly occurred in the Sanford Street house and the Courtland Street house to challenge Instruction No. 5. Gannan's brief initially relied on evidence about acts that purportedly took place in all three houses to challenge Instruction No. 6. However, in his reply brief, Gannan has withdrawn any reliance on acts that purportedly occurred in the Smith Street house to challenge Instruction No. 6.

14

that pertain to the right to jury trial at common law," which in a criminal proceeding include "(1) twelve impartial jurors, (2) a jury summoned from the venue in which the crime was allegedly committed, (3) *the jury's unanimous concurrence in the verdict*, and (4) the jurors' freedom to act in accord with their own judgment." *State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991) (emphasis added).

In *Celis-Garcia*, our Supreme Court considered how a jury's unanimous concurrence in its verdict is affected in a multiple acts case, which is a criminal prosecution where "there is evidence of multiple, ***distinct*** criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." 344 S.W.3d at 155-56 (emphasis added). The following factors are considered when determining whether the criminal prosecution is a multiple acts case: "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." *Id.* at 156 (quoting 75B AM. JUR. 2D *Trial* section 1511 (2007)). The Supreme Court held that, in a multiple acts case, the right to a unanimous jury verdict is protected if either (1) the state "elect[s] the particular criminal act on which it will rely to support the charge," or (2) "the verdict director specifically describ[es] the separate criminal acts presented to the jury and the jury [is] instructed that it must agree unanimously that at least one of those acts occurred." *Id.* at 157. Applying that standard, the Supreme Court concluded that the trial court committed plain error in submitting verdict directors that directed the jury to find the defendant guilty if it believed she committed sodomy by hand-

15

to-genital contact when there was evidence of multiple instances of hand-to-genital contact committed against the victim, any of which would have supported a conviction. *Id.* at 158. The Supreme Court further concluded that such error resulted in manifest injustice because the defendant "relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact[, making] it more likely that individual jurors convicted [the defendant] on the basis of different acts." *Id.* at 159.

Gannan asserts that his claims of plain error are indistinguishable from those in *Celis-Garcia*. We disagree.

### *Point One: Instruction No. 5*

With respect to the charge of statutory rape in the first degree, Instruction No. 5 required the jury to find that Gannan knowingly had sexual intercourse with Victim between August 28, 2018, and September 16, 2018.

Victim generally testified that Gannan placed his penis in Victim's vagina on more than one occasion at the Sanford Street house, though she offered no testimony about specific dates or details for any such incident.[11] Victim specifically testified about one incident where Gannan placed his penis in her vagina at the Courtland Street house, and described in detail where in the house the incident occurred, and that the incident occurred in early September of 2018 while the family was moving into the house. This was the only evidence of a discrete incident of sexual intercourse, and was the only discrete incident established by the evidence to have occurred in the temporal window described in

---

[11]Victim testified about a specific incident of anal intercourse at the Sanford Street house that occurred in the hallway between her bedroom and the living room. The statutory definition of "sexual intercourse" does not include, however, anal intercourse. *See* section 566.010(7).

16

Instruction No. 5. As such, this is not a "multiple acts" case with respect to the charge of statutory rape in the first degree. *Celis-Garcia*, 344 S.W.3d at 155-56 (explaining that a multiple acts case requires "evidence of multiple, *distinct* criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count").

Even if the amalgamation of Victim's testimony about several non-specific acts of sexual intercourse at the Sanford Street house can be viewed to combine with her specific testimony about the act of sexual intercourse at the Courtland Street house to qualify as "multiple, distinct criminal acts," we would nonetheless conclude that the State remediated any unanimity of jury verdict concern by electing to submit the only "particular criminal act" that is supported by the evidence to have occurred between August 26, 2018, and September 16, 2018.[12,13] *Id.* at 157.

The trial court committed no error, plain or otherwise, in submitting Instruction No. 5, the verdict director for statutory rape in the first degree.

Point One on appeal is denied.

---

[12]In addition to a temporal parameter, the State could also have included reference to the Courtland Street house in Instruction No. 5 to further clarify the particular criminal act it was electing to submit on the charge of statutory rape in the first degree. However, its failure to do so was not fatal given the circumstances in this case.

[13]Although the evidence revealed that Victim was inconsistent in recalling the date she last had sexual intercourse with Gannan, her inconsistently reported dates were all associated with describing the single incident of sexual intercourse at the Courtland Street house, and all fell within the temporal parameter submitted in Instruction No. 5. Victim's inconsistent recollections about the date on which Gannan had sexual intercourse with her at the Courtland Street house go to Victim's credibility, but do not render this a multiple-acts case. *State v. Brammer*, 614 S.W.3d 18, 25 (Mo. App. E.D. 2020).

17

*Point Two: Instruction No. 6*

With respect to the charge of patronizing prostitution, Instruction No. 6 required the jury to find that "on or about between August 28, 2018 and September 15, 2018, . . . [Gannan] pursuant to a prior understanding gave money and cigarettes to [Victim] . . . with the understanding that [Victim] would engage in sexual conduct with [Gannan]," and then did engage in sexual conduct with Victim when she was less than fourteen years old.

Victim, in her written statement to police, in her CAC interview, and during her trial testimony, generally stated that Gannan would periodically give Victim cigarettes and money after she engaged in sexual conduct with Gannan. Victim generally testified at trial that Gannan often gave her money or left her cigarettes after they engaged in sexual conduct at either the Sanford Street house or the Courtland Street house, though she could not remember how much money she was given on any particular occasion. Victim offered no details about any incident during which she was given money or cigarettes after having sexual conduct with Gannan, except that Victim's sworn statement suggested she received ten dollars after having sexual intercourse with Gannan at the Courtland Street house. At trial, however, Victim said she could not remember if that was the case.[14]

At best, the evidence identified only one specific incident of patronizing prostitution during the temporal time frame in Instruction No. 6--the money Victim claimed in her sworn statement to have received money after having sexual intercourse with Gannan at the Courtland Street house. At worst, Victim's very general testimony about receiving

---

[14]As noted in footnote 13, *supra*, Victim's inconsistent testimony goes to her credibility, and does not support finding that this is (or is not) a multiple acts case.

18

money or cigarettes in exchange for sexual conduct gave the jurors no basis from which they could have distinguished one instance of patronizing prostitution from another during the three-week charging period.[15] Thus, this is either not a multiple acts case at all, or it is a case where because there is "no evidentiary basis upon which to differentiate between . . . repeated acts, [the] right to a unanimous verdict [is] not at risk of being violated." *State v. Walker*, 549 S.W.3d 7, 12 (Mo. App. W.D. 2018) (holding that, because the victims could not identify what specific acts happened on particular days, the evidence established repeated, identical sexual acts committed at the same location during a particular time span that was set forth in the jury instruction, and "any evidentiary fact that could [have] possibly distinguish[ed] one incident of rape from another . . . was included in the verdict directors"); *see also State v. Armstrong*, 560 S.W.3d 563, 573-74 (Mo. App. E.D. 2018) (holding that, when the victim testified as to repeated, identical acts of statutory sodomy, attempted statutory sodomy, and child molestation committed in the same manner and location during the charged time period, the instructions that were limited to a particular month when such activity occurred did not violate the defendant's right to a unanimous jury verdict because the "record is devoid of any other evidentiary facts that could have been included in each verdict director to distinguish one act of abuse from another").

The trial court committed no error, plain or otherwise, in submitting Instruction No. 6, the verdict director for patronizing prostitution.

---

[15]Gannan's brief emphasizes evidence of multiple instances of sexual conduct that took place at the Sanford Street house and at the Courtland Street house. However, the conduct that is criminalized in a promoting prostitution charge is not sexual conduct, but "giv[ing] something of value to another person as compensation for having engaged in sexual conduct with any person" pursuant to a prior understanding. Section 567.030.1(1).

Point Two is denied.

## Conclusion

The Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur