Cynthia L. Martin, Judge
James Kevin Adams ("Adams") appeals his convictions of two counts of statutory sodomy in the first degree, and one count of child molestation in the first degree, following a jury trial. Adams argues that the verdict directors for these counts violated his constitutional right to a unanimous jury verdict because the verdict directors failed to identify a single criminal act in a manner sufficient to differentiate it from multiple similar acts described in the evidence. We affirm in part, and reverse in part.
Factual and Procedural Background
Adams does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the jury's verdicts, the evidence establishes that in April 2015, eight-year-old H.M. moved with her mother into a house where Adams lived. Adams resided in the basement of the house. During the summer of 2015, among other acts unchallenged here, Adams touched H.M. through *143 her clothing on her "privates," a term H.M. used to reference her vaginal area; Adams removed his clothing and directed H.M. to use her hand to "go up and down" on Adams's "wee-wee;" and Adams "licked" H.M.'s vaginal area.
In August 2015, H.M. told her mother about Adams's conduct. Shortly thereafter, H.M. and her mother moved out of the house. Two forensic interviews were eventually conducted through a Child Advocacy Center. During those interviews, H.M. provided additional details regarding Adams's conduct. Adams was charged with three counts of statutory sodomy in the first degree, one count of child molestation in the first degree, and witness tampering.
At trial, recorded videos of the two Child Advocacy Center forensic interviews ("CAC interviews") were admitted into evidence. During those interviews, H.M. described two different incidents where Adams had H.M. masturbate him. The first incident occurred while H.M.'s mother was not home, and H.M. was on Adams's bed watching television. The second incident occurred while H.M. was sitting on Adams's couch in the basement with the television turned off. During the CAC interviews, H.M. also recounted one specific incident when Adams "licked" her vaginal area while lying on Adams's bed. And during the CAC interviews, in addition to providing generalized details about Adams's touching her vaginal area with his hand "more than one time," H.M. described one specific incident of hand-to-genital molestation that occurred during the summer while H.M. and Adams watched "God of Rings."
At trial, the State tendered five verdict directors that submitted three counts of statutory sodomy in the first degree, one count of child molestation, and one count of witness tampering. Relevant to this case, the verdict director for Count I (statutory sodomy) required the jury to find Adams "knowingly had H.M. touch the defendant's penis with H.M.'s hand while inside [ ] [Adams's] residence." The verdict director for Count III (statutory sodomy) required the jury to find Adams "knowingly licked the genitals of H.M." and that such conduct "constituted deviate sexual intercourse." The verdict director for Count IV (child molestation) required the jury to find Adams "touched the genitals of H.M. with [ ] [Adams's] hand."
The jury convicted Adams on all charged counts, including Counts I, III, and IV, which Adams challenges on appeal.[1] The trial court sentenced Adams to twenty-years imprisonment on each count of statutory sodomy (Counts I, II, and III), to be served concurrently; ten-years imprisonment on the count of child molestation (Count IV); and seven-years imprisonment on the count of witness tampering (Count V). The child molestation and witness tampering convictions were to be served concurrently with one another, but consecutively to the concurrent statutory sodomy sentences.
Adams filed this timely appeal, which challenges his convictions on Counts I, III, and IV on the basis of instructional error.
Standard of Review
Adams raises three points on appeal, each claiming that defective verdict directors violated his constitutional right to a unanimous jury verdict. Adams concedes that he failed to object to the verdict directors at trial. Adams requests plain-error review.
*144 Rule 30.20[2] provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The State urges us to decline plain error review of Adams's claims because Adams submitted converse instructions that mirrored the challenged verdict directors' description of Adams's criminal conduct. The State argues that the converse instructions constituted self-invited error precluding plain error review. We disagree.
It is well recognized that "a defendant cannot complain about an instruction given at his request." State v. Bolden , 371 S.W.3d 802, 806 (Mo. banc 2012) (citing State v. Leisure , 796 S.W.2d 875, 877 (Mo. banc 1990) ). Such self-invited error precludes plain error review. Id. Here, however, Adams is not complaining about an instruction given at his request. He is complaining about verdict directors submitted by the State. Though it is true that Adams submitted converse instructions which mirrored the State's verdict directors, converse instructions must reflect the language of the verdict director. MAI-CR 308.02, Notes on Use 4(B). The converse instructions do not constitute self-invited error of Adams's own making.
In addition, we find it difficult to distinguish the present case from our Supreme Court's holding in State v. Celis-Garcia , 344 S.W.3d 150 (Mo. banc 2011). In Celis-Garcia , the Court rejected the State's waiver argument, and reviewed for plain error an unpreserved claim that verdict directors violated the defendant's constitutional right to a unanimous jury verdict, even though the defendant failed to object to the State's verdict directors and submitted her own verdict directors that suffered from the same defect challenged on appeal. Id. at 154 n. 3. If a defendant's submission of verdict directors suffering the same defect as the State's verdict directors does not waive plain error review, we fail to see how the submission of converse instructions which mirror verdict directors as required waives plain-error review.[3]
Accordingly, we review Adams's claims of instructional error for plain error. Review for plain error is a two-step inquiry. State v. Escobar , 523 S.W.3d 545, 548 (Mo. App. W.D. 2017) (quoting State v. Hunt , 451 S.W.3d 251, 260 (Mo. banc 2014) ). First, we must determine whether the claimed error is "plain error affecting substantial rights." Id. "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left *145 uncorrected." Id. "An error is plain if it is evident, obvious, and clear." Id. (quotes omitted).
"Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice." Escobar , 523 S.W.3d at 548. "The defendant bears the burden to prove that instructional error has produced manifest injustice." Id. "For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." Celis-Garcia , 344 S.W.3d at 154 (quotes omitted).
Analysis
Adams claims that the trial court plainly erred in submitting the verdict directors for Counts I, III, and IV to the jury because each verdict director failed to specify a particular incident of sexual abuse, or to instruct the jury that it must unanimously agree on the same incident, after the State presented evidence of multiple incidents of sexual abuse. According to Adams, this allowed for the possibility that the jury failed to unanimously find that the same incident of sodomy or child molestation occurred, in violation of his right to a unanimous jury verdict.
The Missouri Constitution guarantees the right to a unanimous jury verdict in a criminal trial. Article I, section 22(a); see also Celis-Garcia , 344 S.W.3d at 155. Celis-Garcia held that for a jury verdict to be unanimous "the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilty." Celis-Garcia , 344 S.W.3d at 155 (quoting 23A C.J.S. Criminal Law § 1881 (2006) ) (alteration in original). This means a defendant "is entitled to a concurrence of the minds of the 12 jurors upon one definite charge of crime." Id. (quoting State v. Jackson , 242 Mo. 410, 146 S.W. 1166, 1169 (1912) ).
The right to a unanimous jury verdict is particularly implicated in "multiple acts" cases. "A multiple acts case arises where there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56. In multiple acts cases, special attention to the verdict director is required to avoid asking the jury to consider evidence of several, distinct criminal acts to determine whether to convict on a single, generally submitted charge. To determine whether a case is a multiple acts case, Celis-Garcia held that courts must "consider the following factors: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." Id. at 156 (quoting 75B AM.JUR. 2D Trial § 1511 ).
In Celis-Garcia , a defendant was charged with two counts of statutory sodomy in the first degree, each involving a different victim. Id. at 152-53. Each count was submitted by a verdict director that generally required the jury to find that the defendant committed statutory sodomy by placing a hand on the victim's genitals. Id. At trial, the victims described multiple incidents differentiated by time and location, each of which could have supported a finding of guilt pursuant to the submitted verdict directors. Id. at 153. The Court concluded that Celis-Garcia was a multiple acts case because the incidents described in the evidence could be differentiated by location, time, and other circumstances relating *146 to the alleged criminal act charged. Id. at 156. Because the verdict director for both counts did not require the jury to find guilt based on a specific incident of statutory sodomy described in the evidence, and instead permitted the jury to find that the defendant committed statutory sodomy by the general act of placing a hand on each victims' genitals, the Court found the defendant's constitutional right to a unanimous verdict had been violated. Id. at 158. Celis-Garcia explained that "a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred." Id. at 157.
With the Celis-Garcia framework in mind, we address each of Adams's points on appeal.
Point One
Adams's first point on appeal asserts that the trial court plainly erred, in violation of his constitutional right to a unanimous jury verdict, when it submitted Instruction No. 5, the verdict director for Count I, because the instruction did not specify a particular incident of statutory sodomy or instruct the jury that it must unanimously agree on the same incident of sodomy though the evidence described multiple acts where Adams directed H.M. to masturbate him.
Instruction No. 5, the verdict director for Count I, required the jury to find, in relevant part:
As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or between April 1, 2015, and August 8, 2015, in the County of Callaway, State of Missouri, the defendant knowingly had H.M. touch the defendant's penis with H.M.'s hand while inside the defendant's residence, and
Second, that such conduct constituted deviate sexual intercourse, and
Third that at that time H.M. was a child less than fourteen years old,
Then you will find the defendant guilty under Count I of statutory sodomy in the first degree under this instruction.
The verdict director thus submitted statutory sodomy described solely by whether Adams made H.M. touch his penis while inside Adams's residence. Adams argues that the evidence described multiple acts of this nature.
We agree that H.M. described more than one incident where Adams had her masturbate him in his residence. In her CAC interviews, H.M. described at least two incidents that occurred in Adams's bedroom, with one incident occurring on Adams's bed, and the other incident occurring on Adams's couch. In addition, H.M.'s testimony further differentiated these incidents by describing that she was wearing a pink dress with white stripes, and that the television was turned off, at the time of the incident on the couch, while she and Adams were watching television during the incident on the bed. The evidence established multiple, distinct criminal acts, each of which could have served as the basis for finding Adams's guilty pursuant to Instruction No. 5.[4]
*147 We are not persuaded by the State's argument that this is not a multiple acts case because this case involves evidence of "repeated, identical sexual acts committed at the same location and during a short time span," rendering it nearly impossible for the victim to sufficiently distinguish among acts. Celis-Garcia , 344 S.W.3d at 157 n.8. Although Celis-Garcia acknowledged this category of cases, it declined to address how the constitutional right to a unanimous jury should be protected in such cases. Id. However, the Missouri Court of Appeals has recently addressed this category of multiple acts cases.[5]
The State relies on one of these cases, State v. Walker , 549 S.W.3d 7 (Mo. App. W.D. 2018). In analogizing to Walker , the State posits that the verdict director for Count I was purposefully drafted to include the entire charged period and the general conduct of having H.M. masturbate Adams because the State was not proceeding on a single incident, but rather "urging a conviction on all of the acts of masturbation in the basement." (Resp. Br. 19). The State reasons that in proceeding on all of the acts, it assumed a heightened burdened of proof -- a principle discussed in Walker. Walker , 549 S.W.3d at 13 (holding that the State assumed a heightened burden of proof when the verdict director required the jury to find that a defendant had sexual intercourse with a victim in his bedroom "every time" the victim's mother went to Wal-Mart). The State's reliance on Walker is unavailing.
Unlike the verdict director in Walker, Instruction No. 5 did not require the jury to find that Adams committed sodomy on each occasion described in the evidence. More importantly, the victims in Walker "testified to repeated, identical sexual acts committed at the same location during a particular time span, ... [and the victims] were unable to testify to specific acts on specific dates." Id. at 12. In contrast, H.M. was able to differentiate between identical sexual acts. While both incidents of forced masturbations described by H.M. occurred in Adams's basement bedroom, the incidents were distinguished by a more specific description of location on either Adams's bed or his couch. And H.M. described additional distinguishing circumstances during her CAC interviews, including whether the television was on or off, and the clothing she was wearing. Because the evidence differentiated between multiple acts where H.M. was forced to masturbate Adams, this is not a case like Walker .[6]
*148 Because the evidence described multiple, distinct acts of forced masturbation, and because Instruction No. 5, the verdict director for Count I, did not specifically describe which incident was being submitted, the jury could have convicted Adams based on the incident that occurred on Adams's bed, or the incident that occurred on Adams's couch. The verdict director evidently, obviously, and clearly affected Adams's substantial right to a unanimous verdict.[7]
Having found plain error affecting Adams's substantial rights, we must next determine whether the plain error resulted in a manifest injustice or miscarriage of justice warranting reversal. Under this analysis, we must determine "whether the error affected the verdict." Escobar , 523 S.W.3d at 551. In Celis-Garcia , the Court found that plain error rose to the level of manifest injustice when the defendant relied on a defense composed of "evidentiary inconsistencies and factual improbabilities respecting each specific allegation" of charged conduct. Celis-Garcia , 344 S.W.3d at 159. Although not the sole consideration, this incident-specific defense made it "more likely that individual jurors convicted [the defendant] on the basis of different acts." Id. An incident-specific defense stands in contrast to a unitary defense, such as a general denial or defense that a victim fabricated all allegations. See Escobar , 523 S.W.3d at 552-53.
In Escobar , this court found a plainly erroneous verdict director did not affect the unanimity of a jury verdict because the State focused its inquiry on two specific incidents of sexual abuse, and the court submitted two verdict directors. Escobar , 523 S.W.3d at 552. The timing of the two specifically described incidents corresponded with date ranges included in each verdict director, effectively differentiating the incidents. Id. The defendant provided only a general denial to contest the victim's allegations, and the victim was consistent in her allegations. Id. The Court held that "given the totality of the circumstances, the nature of [victim's] testimony, and [defendant's] defense, there [was] no reasonable argument that the alleged error affected the verdict." Id. at 553.
This case is distinguishable, however, from Escobar and is more aligned with Celis-Garcia . Adams's defense at trial on Count I included both an incident-specific argument and a general denial. Adams argued that the incident of masturbation that occurred on his bed could be innocently explained by H.M. jumping on him while he was sleeping, causing him to inadvertently become aroused and ejaculate, transferring semen to H.M.'s pajamas pants. Adams argued that he told H.M. to *149 keep the incident "a secret" because he feared the incident would result in criminal charges, and that H.M. exaggerated the incident on the bed. In contrast, Adams offered a general denial regarding the incident on the couch. The combination of two distinct incidents and two distinct defenses increased the likelihood that some jurors convicted Adams because they rejected his general denial of the incident on the couch but accepted his incident-specific explanation of the incident on the bed, while other jurors convicted Adams because they rejected his incident-specific defense and accepted his general denial. Adams's defenses exacerbated the prejudicial effect of the flawed verdict director, increasing the likelihood that Adams was convicted of statutory sodomy on Count I without a unanimous jury verdict.[8] "We cannot pretend to know what occurred in the jury room. However, the overly generalized ... verdict directors, lacking in any admonition that their unanimity on the specific acts committed was required, did not ensure that the jurors were properly instructed before their deliberation." State v. Carlton , 527 S.W.3d 865, 878 (Mo. App. E.D. 2017).
We find that "the verdict director[ ] [for Count I] misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice." Celis-Garcia , 344 S.W.3d at 159. Accordingly, Adams's Count I conviction for first-degree statutory sodomy is reversed, and he is entitled to a new trial on that charge.
Point One is granted.
Point Two
Adams's second point on appeal asserts that the trial court plainly erred, in violation of Adams's constitutional right to a unanimous jury, when it submitted Instruction No. 17, the verdict director for Count III. Adams alleges plain error because the instruction did not specify a particular incident of statutory sodomy or instruct the jury that it must unanimously agree on the same incident of sodomy, although multiple, distinct acts sufficient to convict Adams were described in the evidence.
Instruction No. 17, the verdict director for Count III, required the jury to find in pertinent part that:
First, that on or between April 1, 2015, and August 8, 2015, in the County of Callaway, State of Missouri, the defendant knowingly licked the genitals of H.M., and *150 Second, that such conduct constituted deviate sexual intercourse, and
Third, that at that time H.M. was a child less than fourteen years old,
then you will find the defendant guilty under Count III of statutory sodomy in the first degree under this instruction. (emphasis added).
The verdict director thus submitted statutory sodomy based on whether Adams knowingly licked the genitals of H.M. Adams argues that the evidence described multiple, distinct acts that could have supported his conviction pursuant to this verdict director. We disagree.
During the CAC interviews, H.M. reported in very general terms that Adams "licked" her in her "bad spot" on repeated occasions. However, H.M. only provided details about a single specific incident during the CAC interviews, where H.M. said she was lying on Adams's bed while wearing her clothes. At trial, H.M. was cross-examined about this specific incident, and was asked "how did [Adams] lick you with your clothes on?" H.M. responded that "my pants were down."
On appeal, Adams relies on H.M.'s cross-examination testimony to argue that the evidence established two distinct "licking" incidents, differentiated by whether the licking occurred over clothing, or with H.M.'s pants pulled down. We are not persuaded that H.M.'s trial testimony could have been viewed by the jury as describing a second, distinct incident from the specific incident described in the CAC interviews. As such, Instruction No. 17, the verdict director for Count III, did not implicate Adams's right to a unanimous verdict because the evidence did not describe multiple, distinct acts, any one of which could have supported a finding of guilt.
Even assuming, arguendo , that some jurors might have understood H.M.'s trial testimony to describe a second incident distinct from the one described in the CAC interviews, Adams's point on appeal would still be without merit. Instruction No. 17 also required the jury to find that Adams's act of licking H.M.'s genitals constituted "deviate sexual intercourse." The jury was instructed that "deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person." See section 566.010(1). In contrast, the jury was also provided with the definition of "sexual contact," which includes "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing , for the purpose of arousing or gratifying sexual desire of any person." See section 566.010(3) (emphasis added). "Deviate sexual intercourse" has been held not to include sexual touching through clothing. See State v. Peeples , 288 S.W.3d 767, 770-71 (Mo. App. E.D. 2009) (holding that evidence of touching of a victim's genitals through clothing was insufficient evidence to support a conviction based on "deviate sexual intercourse," though sufficient to support a conviction of "sexual contact"); see also State v. Bonich , 289 S.W.3d 767, 772-73 (Mo. App. S.D. 2009) (holding that a defendant had not committed deviate sexual intercourse during an incident of hand-to-genital statutory sodomy through the underwear of the victim, but evidence was sufficient to convict for attempted statutory sodomy).
Because even generously viewed, the evidence detailed only a single incident of "licking" that constituted "deviate sexual intercourse," Instruction No. 17 did not evidently, obviously, or clearly affect Adams's right to a unanimous verdict. The jury could only have found that Adams committed deviate sexual intercourse if it believed beyond a reasonable doubt that *151 Adams "licked" H.M. while her pants were pulled down. The State's verdict director effectively submitted the only criminal act described in the evidence that would support the charge, one of two means described in Celis-Garcia for protecting the right to a unanimous verdict in a multiple acts case. See State v. Watson , 512 S.W.3d 94, 97 (Mo App. W.D. 2017) (holding that the State took sufficient steps to avoid a violation of defendant's right by electing to submit a particular act to support the charge).
Point Two is denied.
Point Three
Adams's third point on appeal asserts that the trial court plainly erred, in violation of Adams's constitutional right to a unanimous jury, when it submitted Instruction No. 23, the verdict director for Count IV. Adams alleges plain error because the instruction did not specify a particular incident of child molestation, or instruct the jury that it must unanimously agree on the same incident of child molestation, although evidence of multiple, discrete acts of hand-to-genital molestation was presented to the jury.
Count IV of the indictment charged Adams with child molestation in the first degree under section 566.067. At the time of Adams's offense, a person committed the crime of first-degree child molestation if "he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067(1). As discussed supra , section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."
Instruction No. 23, the verdict director for Count IV, required the jury to find, in pertinent part, that:
First, that on or between April 1, 2015, and August 8, 2015, in the County of Callaway, State of Missouri, the defendant touched the genitals of H.M. with the defendant's hand, and
Second, the defendant did so for the purpose of gratifying defendant's sexual desire, and
Third, that H.M. was a child less than fourteen years old[.]
The verdict director thus submitted child molestation described as Adams touching the genitals of H.M. Adams argues that the evidence described multiple acts that could have supported his conviction pursuant to this verdict director, violating his right to a unanimous verdict. We disagree.
During her CAC interviews, H.M. generally reported that Adams touched her "privates" with his fingers more than one time. She specifically described only one incident, however, where Adams touched her privates while they were sitting on the couch in his basement bedroom with "God of the Rings" on the television. At trial, H.M. was cross-examined, and testified as follows:
Defense Counsel: Do you remember sitting on [Adams's] lap?
H.M.: Yes. That's how he touched me in my privates, sitting on his lap.
Defense Counsel: Okay. And you had your clothes on?
H.M.: Yes.
Defense Counsel: Okay. Do you remember what you were doing when you were sitting on his lap? Were you playing crafts or?
H.M.: Sometimes.
H.M.'s testimony generally described that Adams touched her privates while she was sitting on his lap. This testimony does not *152 describe an incident that can be differentiated from the specific incident H.M. described in the CAC interviews. The incident H.M. described where she and Adams were on his couch watching "God of Rings" could very well have included the details that H.M. was sitting on Adams's lap while she and Adams were playing crafts. Though the response of "sometimes" to the suggestion that H.M. and Adams were playing crafts supports H.M.'s general report during the CAC interviews that Adams touched her more than once, the vague reference to "sometimes" playing crafts is not sufficient to describe a distinctly separate incident from the only incident H.M. specifically described in the CAC interviews.[9]
Because the evidence did not describe multiple, distinct incidents where Adams touched H.M. 's genitals, Instruction No. 23 did not evidently, obviously, or clearly affect Adams's right to a unanimous verdict.
Point Three is denied.
Conclusion
The trial court's judgment of conviction and sentence on Count I is reversed and this matter is remanded for a new trial on Count I, unless the State elects to dismiss that charge. We affirm the trial court's judgment of conviction and sentence on Counts III and IV.[10]
All concur

On appeal, Adams does not challenge his conviction on Count II of statutory sodomy in the first degree based on conduct that occurred outside of Adams's residence, or his conviction on Count V for witness tampering.

All rule references are to Mo. R. Crim. P. (2018).

Though Celis-Garcia found plain error, notwithstanding the defendant's tender of verdict directors that suffered the same defect as those submitted by the state, defendants in future multiple acts cases should not presume that they will enjoy a perpetual free pass to secure plain error review in these cases. Notwithstanding that the right to a unanimous jury verdict is an important constitutional principle, Celis-Garcia has been settled law for several years, rendering it more and more difficult to excuse a defendant's failure to object to, and thus preserve, instructional error in multiple acts cases.
Similarly, there is virtually no excuse for the state or trial courts to continue to perpetuate instructional error (plain or otherwise) in multiple acts cases, when the roadmap for remediating instructional error was laid out in Celis-Garcia , and has been further developed in subsequent cases. There should be particular sensitivity to avoiding instructional error in multiple acts cases given that the failure to do so imposes a tremendous emotional burden on young victims who may be required to testify a second time.

Both acts fell within the definition of "deviate sexual intercourse" as submitted in Paragraph second of the verdict director, defined by the instructions as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person...." See section 566.010(1). All statutory references are to RSMo 2000 as supplemented through the date of the alleged offense, unless otherwise indicated.

See State v. Walker , 549 S.W.3d 7 (Mo. App. W.D. 2018) (holding there was no unanimous verdict violation when the verdict directors identified an act of statutory rape occurring in a specific location over a period of time -- "on or about May 2014 ... the defendant knowingly had sexual intercourse with [victim] in defendant's bedroom in [town] every time her Mom went to Wal-Mart ," -- and evidence was offered of repeated, identical sexual acts committed at the same location during that particular time span, because the factual restrictions contained in the verdict director proscribed jurors from relying on evidence that would differentiate between the repeated acts.); State v. Armstrong , ED 105771, 560 S.W.3d 563, 2018 WL 3977548 (Mo. App. E.D. 2018) (holding that there was no unanimous jury verdict violation).

The State acknowledges that it "cannot cure a non-specific verdict director by selecting a particular incident in closing argument." (Resp. Br. 21) (citing State v. Rycraw , 507 S.W.3d 47, 63-64 (Mo. App. E.D. 2016)) (holding that a prosecutor's closing argument, which urged a conviction on a particular incident after presenting evidence of multiple acts, did not cure a non-specific verdict director). If the State presents multiple acts to support a charge, but does not submit a verdict director distinguishing between the multiple acts, then the jury is presumed to have followed the defective instructions submitted to it, and not the prosecutor's closing argument, regardless if the prosecutor urges a conviction on a different -- and perhaps even otherwise sufficient -- basis than described in the instructions. Id. The State attempts to distinguish Rycraw by arguing that the prosecutor in the present case "referred collectively to all of the acts of masturbation in the basement and urged a conviction based on those acts -- an argument that was consistent with a reasonable reading of the verdict director." (Resp. Br. 22). The State's reading of Rycraw depends, however, on its misguided belief that Walker applies to this case.

To comply with Celis-Garcia , the State could have elected to proceed on particular incidents by charging Adams on the basis of the incident on the couch or the bed, or both. In such a case, the verdict director could have simply been modified to require the jury to find that "defendant knowingly had H.M. touch the defendant's penis with H.M.'s hand while inside the defendant's residence, while on defendant's couch," or "while on defendant's bed."

The State argues that Adams's defenses relating to Count I were logically excluded from consideration by the jury because of the way the verdict director was drafted. Specifically, the State argues that the jury "could not have found Mr. Adams guilty as posited in Instruction 5 based on a touching that Victim accomplished while [Adams] was asleep" because the verdict director required the jury to find that Adams "had H.M. touch [ ] [Adams's] penis with [H.M.'s] hand." (Resp. Br. 22). The State additionally argues that "to the extent that the incident might not have been as innocent as Mr. Adams claimed, the touching of Mr. Adams's penis that would have occurred when [H.M.] allegedly jumped on him would not have been done with H.M.'s hand and it would have been through [H.M.] clothing (as shown by Mr. Adams's claim that some ejaculate got on her pajamas)." (Resp. Br. 22). Seemingly, the State argues that Adams's explanation of the incident on the bed means that incident does not qualify as criminal conduct under the Count I verdict director because it would not have constituted deviate sexual intercourse. The State's argument presupposes, however, that all twelve jurors believed Adams's explanation, and ignores that evidence sufficient to convict of a second incident on the couch was also presented to the jury. There is no way to know on which basis each juror determined to convict because the verdict director did not specify a particular incident or require the jury to come to a unanimous verdict about any particular incident.

In contrast, the multiple acts described in connection with Adams's first point on appeal were logically incompatible based on discrete descriptions of two locations (the bed and the couch) where Adams forced H.M. to masturbate him.

Because the judgment of conviction and sentence as to Counts II, III, IV, and V remains in force and effect, Adams's will continue to serve two twenty-year concurrent sentences on Counts II and III, and a ten-year sentence on Count IV served concurrently with the seven-year sentence on Count V, with the sentences on Counts IV and V served consecutively to the sentences on Counts II and III.